**FILED**

**October 5, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 10:18 AM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | | |
|---|---|---|
| **JOSHUA T. KING,** | ) | **Docket No.: 2015-03-0886** |
| **Employee,** | ) | |
| **v.** | ) | |
| **COMPASS HEATING AND AIR,** | ) | **State File No.: 95439-2015** |
| **Employer,** | ) | |
| **and** | ) | |
| **THE HARTFORD,** | ) | **Judge Pamela B. Johnson** |
| **Carrier.** | ) | |

### EXPEDITED HEARING ORDER
### GRANTING MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on September 16, 2016, on the Request for Expedited Hearing filed by Joshua T. King, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Mr. King sustained an injury arising primarily out of and in the course and scope of his employment with, Compass Heating and Air, entitling him to temporary disability and medical benefits. For the reasons set forth below, the Court holds Mr. King sufficiently demonstrated that he is likely to succeed at a hearing on the merits on the central legal issue and awards the requested medical and temporary disability benefits.[1]

### History of Claim

Mr. King worked for Compass as a HVAC installer. Mr. King testified that while lifting a unit into an attic, he experienced immediate pain in his left groin area and developed a bulge.[2] The parties dispute the date of injury and the mechanism of injury.

As to the date of injury, Mr. King indicated the incident occurred on a Friday. In

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] Mr. King stood during his testimony and demonstrated to the Court his body mechanics while pulling the unit onto a landing into the attic space when he experienced pain in his groin, felt a tug, and developed the bulge.

1

his affidavit and in the Petition for Benefit Determination, Mr. King stated that the lifting incident occurred on October 30, 2015. (Ex. 1.; T.R. 1.) However, during his testimony, Mr. King indicated the lifting incident resulting in the bulge occurred on November 6, 2016. Mr. King explained he gave conflicting dates of injury because he was not good with dates.[3] Regardless of whether the incident occurred Friday, October 30, or Friday, November 6, Mr. King testified he experienced pain, felt a pull, and developed a bulge while at work for Compass. Mr. King stated his pain continued to worsen over the remainder of the day. He further stated he had not previously developed a hernia or bulge and nothing he did at home or elsewhere off the job led to the development of the hernia or bulge.

During cross-examination of Mr. King, Compass challenged Mr. King's direct testimony concerning a November 6, 2015 date of injury in light of his prior affidavit and PBD listing an October 30, 2015 date of injury. However, the first report of work injury prepared by Compass employee, Beth Corum, listed the "date of injury" as "11-6-15," listed the "date employer notified of injury" as "6-9-15," listed the "date last worked" as "6-6-15," and noted Mr. King went to the emergency room on "11-6-15." Ms. Corum noted she prepared the report on "12-2-15." *See generally* Ex. 7. Compass did not offer any testimony to explain the dates provided on the first report of work injury.[4]

On the issue of notice provided to Compass of the work incident, Mr. King testified he told his immediate supervisor, Jonathan Cody, and showed him the bulge the same day. During Mr. Cody's testimony, he confirmed Mr. King told him that he thought he hurt something after lifting the unit into the attic. Mr. Cody further confirmed that he observed a knot near Mr. King's groin approximately the size of a golf ball. Mr. Cody stated he told Mr. King to report the incident to Phyllis Lusk the next day. He indicated it was apparent to him that Mr. King was hurt on the job.[5]

Mr. King testified he reported the incident to Phyllis Lusk the following day because no one was in the office when he returned to the shop the day of the injury. On cross-examination, Mr. King admitted it may have been the following Monday when he spoke with Ms. Lusk, who instructed him to take ibuprofen and rest for a few days. He stated Ms. Lusk also directed him to a walk-in clinic for a drug test, which he said he passed.

As to medical treatment, on Monday, November 9, Mr. King went to the

---

[3] Mr. King additionally admitted that he suffered from a learning disability and could not read or write well.

[4] The parties agreed to mark Exhibit 8 for identification purposes only. Neither party moved to introduce Exhibit 8 during the hearing. As such, this Court did not consider the contents of Exhibit 8 in reaching its findings of fact or conclusions of law.

[5] Compass offered the testimony of Mark Denton, who worked with Mr. King and Mr. Cody on the date of the incident. Mr. Denton testified he was not aware of any injury suffered by Mr. King. He stated that he was working below and pushing the unit up into the attic and could not see into the attic with the unit and platform in place. He further admitted that he could not say whether Mr. King moved or lifted the unit and/or sustained any injury.

2

Emergency Room at Fort Sanders Regional Medical Center, "complaining of a knot on his genitals s/p lifting a/c unit while at work onset 3 days ago." (Ex. 9, p. 2 of 5.)[6] The attending physician, Dr. Michael B. Kennedy, discharged Mr. King with a diagnosis of "Inguinal hernia, left side, acute." *Id.* at 3 of 5. Dr. Kennedy prescribed Tramadol for pain and instructed Mr. King to follow-up with Jonathan Ray in one to two days. *Id.*[7]

When Mr. King attempted to make an appointment, Dr. Ray's office informed Mr. King that Dr. Ray did not accept workers' compensation patients. (Ex. 1., p. 2.) Compass provided Mr. King a panel of physicians, but later denied the claim. (Exs. 1, 4, and 5.) Mr. King testified that his hernia was still present and painful.

Following the work incident, Mr. King testified he advised Compass he was restricted to lifting no greater than ten pounds. He stated when he called Ms. Lusk to discuss available light duty work, she said there was nothing for him to do. Since then, he has been unable to work with the exception of a brief period of employment at IHOP as a dishwasher.

Mr. King argued he sustained a work injury while in the course and scope of his employment with Compass. He reported the incident, but Compass denied medical treatment. He has been unable to work due to his work injury, but Compass did not pay him temporary disability benefits. Mr. King asked this Court to order Compass to provide him with medical and temporary disability benefits in accordance with the Workers' Compensation Law.

Compass argued Mr. King failed to establish the prerequisites of Tennessee Code Annotated section 50-6-212. It averred Mr. King offered inconsistent testimony concerning the date of injury and thus cannot establish a specific incident that resulted in a hernia. It further argued Mr. King failed to offer a medical opinion causally linking the hernia to a work incident. Additionally, Compass argued that Mr. King failed to establish entitlement to temporary disability benefits.

### Findings of Fact and Conclusions of Law

The Court now turns to the legal principles it must apply to grant or deny Mr.

---

[6] Compass objected to the introduction of Exhibit 9 pursuant to Rule 0800-02-21-.16(6)(b) (June, 2015) of the Tennessee Compilation Rules and Regulations. Compass argued the Court should strike any portion of Exhibit 9 not signed by a medical doctor. This Court sustained the objection and considered only the portions of Exhibit 9 covered by the Provider Attestation electronically signed by Michael B. Kennedy, M.D.

[7] Mr. King moved to introduce Mr. King's November 24, 2015 office visit at Family Care Specialists. Compass objected to the introduction pursuant to Rule 0800-02-21-.16(6)(b), arguing the copy does not contain the signature of a physician. This Court marked the medical record as Exhibit 10 for identification only and took the matter under advisement. Upon consideration of *Morgan v. Macy's, et al.,* No. 2016-08-0270, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *11-14 (Tenn. Workers' Comp. App. Bd. August 31, 2016), this Court sustained the objection and did not consider Exhibit 10 in reaching its findings of fact or conclusions of law.

King the benefits he requests. Mr. King need not prove every element of his claim by a preponderance of the evidence in order to recover temporary disability and/or medical benefits at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

This lesser evidentiary standard does not relieve Mr. King of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). In analyzing whether he met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. King nor Compass. *See* Tenn. Code Ann. § 50-6-116 (2015).

With the above principles in mind, an injury must arise primarily out of and occur in the course and scope of the employment to be compensable under the Workers' Compensation Law. *McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *8-9 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015); *see also* Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015).

In the present case, Mr. King identified a specific incident, identifiable by time and place that occurred while he performed his job duties at Compass. Mr. King testified, while lifting a unit into an attic, he experienced immediate pain in his left groin area and developed a bulge. There was conflicting testimony and evidence introduced concerning the date of the work incident. Mr. King noted on the PBD and in his affidavit an October 30, 2015 date of injury. During his testimony, he indicated the lifting incident resulting in the hernia occurred on November 6, 2015. Mr. King explained that he has a learning disability and is bad with dates. However, he indicated the lifting incident occurred on a Friday as confirmed by Mr. Cody. Compass's First Report of Work Injury listed a November 6, 2015 date of injury. The emergency room record confirmed November 6, 2015, as the date of injury.

The issue then turns to whether the November 6, 2015 incident resulted in an

4

injury arising primarily out of and in the course and scope of employment. In *McCord*, the Workers' Compensation Appeals Board analyzed the burden of proof required at the Expedited Hearing stage and concluded:

> We find, therefore, that an employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1). A contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system. *See* Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2014). Moreover, we note that since an expedited hearing is interlocutory in nature, either party may present additional evidence at the final compensation hearing and ask the trial court to reverse or modify the interlocutory order.

*Id.* at *4.

In *McCord*, the Workers' Compensation Appeals Board further analyzed what act or event triggers an employer's responsibility to provide a panel of physicians. Specifically, the Workers' Compensation Appeals Board held, "[M]ere notice of an alleged workplace accident, in and of itself, does not trigger an employer's duty to provide medical benefits in every case, without regard to the particular circumstances presented." *Id.* at *7. The employee offered testimony without contradiction that she felt symptoms while lifting boxes, which resulted in two emergency room visits with similar complaints, and a report of injury to the employer. *Id.* at *15-17. The Appeals Board concluded in *McCord*, "Employee's testimony, the exhibits, and the record as a whole support[ed] the trial court's determination that Employee [was] entitled to a panel of physicians."

Here, this Court must determine whether Mr. King is likely to prevail at a hearing on the merits on the issue of entitlement to medical benefits, specifically a panel of physicians. Mr. King testified, while lifting a unit into an attic, he experienced immediate pain in his left groin area and developed a bulge. Mr. King testified that he reported the incident to his supervisor, Mr. Cody, who confirmed a report of injury and visually confirmed the bulge. Mr. King further stated he reported the lifting incident to Ms. Lusk, sought emergency room treatment, and received a diagnosis of an acute inguinal hernia. This Court finds Mr. King to be credible. Considering the testimony of Mr. King and the evidence as a whole, this Court holds that Mr. King presented sufficient

5

evidence demonstrating that he is entitled to a panel of physicians.

Compass argued that Mr. King failed to satisfy Tennessee Code Annotated section 50-6-212 (2015), wherein certain prerequisites must be definitely proven for entitlement to compensation for a hernia or rupture resulting from an injury by accident arising primarily out of and in the course and scope of employment. Benefits may be awarded for a work-related hernia or rupture if: (1) There was an injury resulting in hernia or rupture; (2) The hernia or rupture appeared suddenly; (3) It was accompanied by pain; (4) The hernia or rupture immediately followed the accident; and (5) The hernia or rupture did not exist prior to the accident for which compensation is claimed. Tenn. Code Ann. § 50-6-212(a) (2015).

Here, King testified, while lifting a unit into an attic, he experienced immediate pain in his left groin area and developed a bulge, which the emergency room attending physician diagnosed as an acute inguinal hernia. Mr. King further testified without contradiction that he did not have a hernia before the lifting incident. Accordingly, this Court concludes that Mr. King provided sufficient evidence demonstrating he is likely to prevail at a hearing on the merits concerning whether he suffered a compensable hernia pursuant to section 50-6-212(a). Therefore, Compass shall provide Mr. King a panel of physicians from which he may select an authorized treating physician to evaluate and treat his hernia.

The next issue this Court must consider is Mr. King's eligibility for temporary disability benefits. An injured employee is eligible for temporary total disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.*

Temporary partial disability benefits are available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). "Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

6

Mr. King admitted on cross-examination the emergency room placed lifting restrictions of no greater than ten pounds and he relayed the restrictions to Compass. He further admitted that Compass provided him an opportunity to return to work on light duty. However, he testified without contradiction that when he called Ms. Lusk to discuss the light duty work, she told him there was nothing for him to do. With the exception of a brief period of employment at IHOP as a dishwasher, Mr. King stated that he did not work after the lifting incident resulting in the hernia at Compass. This Court concludes Mr. King demonstrated he is likely to prevail at a hearing on the merits regarding entitlement to temporary partial disability benefits. Therefore, Compass shall pay Mr. King temporary partial disability benefits from the last date he worked for Compass, to the present, taking into consideration his brief employment at IHOP during this period. Compass shall continue to pay Mr. King temporary disability benefits in accordance with Tennessee Code Annotated section 50-6-207 (2015).

**IT IS, THEREFORE, ORDERED** as follows:

1. Compass shall provide Mr. King with medical treatment made reasonably necessary by the November 6, 2015 injury and in accordance with Tennessee Code Annotated section 50-6-204 (2015). Compass shall provide Mr. King with a panel of physicians from which he may select an authorized treating physician.

2. The amount of temporary disability benefit is $231.04 per week based on Mr. King's average weekly wage of $346.55.

3. Compass shall pay Mr. King temporary partial disability benefits from the last date he worked for Compass, to the present, taking into consideration his brief employment at IHOP during this period. Compass shall continue to pay Mr. King temporary disability benefits in accordance with Tennessee Code Annotated section 50-6-207 (2015).

4. This matter is set for an Initial (Scheduling) Hearing on **December 6, 2016**, at **9:30 a.m. Eastern Time**. The parties must call 865-594-0091or 855-543-5041 toll free to participate in the Initial Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

7

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 5th day of October, 2016.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Technical Record:

- Petition for Benefit Determination, filed December 18, 2015;
- Dispute Certification Notice, filed January 28, 2016;
- Show Cause Order, entered May 18, 2016;
- Order, entered June 2, 2016; and
- Request for Expedited Hearing, filed June 3, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulations of Fact:
- The parties agreed that Mr. King's average weekly wage was $346.55 at the time of the alleged work injury, which correlates to a workers' compensation rate of $231.04 per week.

Exhibits:

- EXHIBIT 1: Affidavit of Joshua T. King;
- EXHIBIT 2: Affidavit of Jonathan D. Cody;
- EXHIBIT 3: Wage Statement, Form C-41; and
- EXHIBIT 4: Notice of Denial of Claim for Compensation, Form C-23;
- EXHIBIT 5: Choice of Physician, Form C-42;
- EXHIBIT 6: Post-Accident Urine Drug Screen;
- EXHIBIT 7: Employer's First Report of Work Injury or Illness;
- EXHIBIT 8 (Marked for Identification Purposes Only): Unsworn Statement of Phyllis Lusk, dated December 2, 2015;
- EXHIBIT 9: Medical Records from Fort Sanders Regional Medical Center; and
- EXHIBIT10 (Marked for Identification Purposes Only): Medical Record from Family Care Specialist.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Martin Ellis, Esq., Employee's Counsel | | | X | mellis@ellisandellislaw.com |
| Joseph W. Ballard, Esq., Employer's Counsel | | | X | joseph.ballard@thehartford.com |

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**